UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDWARD ROBERSON III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-CV-2270-B |
| | § | |
| LVNV FUNDING, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss (Doc. 21) filed by Defendant RS Clark and Associates, Inc. ("RS Clark"). Having reviewed the briefing and applicable law, the Court **GRANTS** RS Clark's Motion. The Court **DISMISSES** Roberson's claims against RS Clark **WITH PREJUDICE**.

### I.

### BACKGROUND

This suit considers whether a debt collector who allegedly violated provisions of the Fair Debt Collection Practices Act ("FDCPA") by providing false information to a third-party credit report agency about a consumer's debt can be sued by the consumer if the false information had a positive, rather than negative, result on the consumer's credit score. Sometime prior to March 2025, Plaintiff Edward Roberson III received a personal loan for an unspecified purpose. *See* Compl. ¶¶ 8, 13, *Roberson v. RS Clark & Associates*, No. 3:25-cv-2273-B (N.D. Tex. Aug. 22, 2025), ECF No. 1 (hereinafter "RS Clark Complaint"). RS Clark, a debt collector, acquired the debt from Roberson's loan sometime thereafter. *See id.* ¶ 12. For reasons unknown to the Court, Roberson later disputed

-1-

the debt's validity. *See id.* But then, in March 2025, Roberson allegedly contacted RS Clark via letter to notify it that he "no longer" disputed the debt. *Id.* ¶ 13, Ex. 1. Roberson also requested that RS Clark remove any dispute notations from his credit report. *Id.* Several months later, Roberson pulled a credit report from two credit reporting companies, Experian and Equifax. *Id.* ¶ 15. Both reports indicated that the debt was still disputed, as opposed to merely unpaid, allegedly resulting in an inaccurate credit score. *See id.* ¶ 16, Ex. 2.

Roberson brought the present suit against RS Clark, and similar suits against other debt collectors, on August 22, 2025. *See generally id.*; *see also* Doc. 1, Compl. This Court consolidated those cases in September 2025. *See* Doc. 7, Order, 1. As to RS Clark, Roberson alleges a violation of the FDCPA, specifically 15 U.S.C. § 1692e, for failing to accurately communicate the debt's disputed status to third parties. *See* RS Clark Compl. ¶¶ 24-30. In response, RS Clark filed its Motion to Dismiss, contending that Roberson lacks standing because there was no injury in fact, and that Roberson fails to state a valid claim for relief under the FDCPA. *See* Doc. 21, Mot. Dismiss ¶ 6.

The Court considers RS Clark's Motion below.

## II.

## LEGAL STANDARDS

If a court determines "that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Defendants can raise arguments that the court lacks subject-matter jurisdiction on their own motion under Federal Rule of Civil Procedure 12(b)(1). A "court should consider . . . Rule 12(b)(1) jurisdictional attack[s] before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "In examining a Rule

12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Id.* (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

## ANALYSIS

RS Clark argues both that Roberson lacks standing, such that this Court lacks jurisdiction, under Rule 12(b)(1) and that Roberson fails to state a claim under Rule 12(b)(6). The Court finds that while Roberson has standing, he fails to state a claim under Rule 12(b)(6).

A.   *Roberson Has Standing to Assert His FDCPA Claim Against RS Clark*

The Constitution of the United States limits the jurisdiction of federal courts to "Cases" and "Controversies." Art. III, § 2. Due to the expansive nature of those two terms, courts invoke the doctrine of standing to separate out cases and controversies subject to judicial review from those that are not. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Without standing, courts lack jurisdiction to hear a given claim. *See id.* "A plaintiff must demonstrate standing for each claim she seeks to press and have standing separately for each form of relief sought." *Latitude Sols., Inc. v. DeJoria*, 922 F.3d 690, 695 (5th Cir. 2019) (citation modified).

To establish standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury "will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (citations omitted). Plaintiffs "must clearly allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified). To show an injury in fact, the injury must be (1) concrete and particularized, and (2) actual or imminent—not "'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (citations omitted). "An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *FDA v. All. for Hip. Med.*, 602 U.S. 367, 381 (2024).

In the context of a statutory violation, allegations of a "bare procedural violation" are insufficient to allege an injury in fact where "divorced from any concrete harm." *Spokeo*, 578 U.S. at 341 (citations omitted). This is because of an "important difference . . . between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of" that violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021). A plaintiff who only sues due to the defendant's statutory violation is "not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)." *Id.* at 427-28 (citing *Spokeo*, 578 U.S. at 345 (Thomas, J., concurring)) (other citation omitted). Thus, when faced with allegations of a statutory violation, courts consider "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 424 (citing *Spokeo*, 578 U.S. at 341). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.*

Roberson asserts a single claim against RS Clark for a violation of 15 U.S.C. § 1692e. RS Clark Compl. ¶¶ 24-30. Specifically, Roberson contends that even after he informed RS Clark that he no longer disputed a particular debt, RS Clark communicated with third parties that the debt was in dispute. *Id.* ¶ 25. In doing so, Roberson contends that RS Clark violated § 1692e(2) by falsely representing the non-disputed status of a debt and violated § 1692e(8) by reporting credit information known to be false to a consumer reporting agency. *Id.* However, Roberson lacks standing unless he can establish a concrete harm beyond the statutory violation itself. *See Spokeo*, 578 U.S. at 341 (holding that, absent a showing of concrete harm, "bare procedural violation[s]" are insufficient evidence of standing) (citations omitted).

Roberson alleges injury apart from the statutory violation itself in two forms: (1) reputational harm and (2) emotional distress.[1] *See* RS Clark Compl. ¶¶ 21-22. RS Clark contends that these alleged injuries are not concrete and thereby fail to assert more than a bare statutory violation. *See* Doc. 21, Mot. Dismiss ¶ 10. To resolve this dispute, the Court must determine whether Roberson's alleged harms have "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *See TransUnion*, 594 U.S. at 424 (citation omitted). The Court considers each alleged "harm" below.

1. <u>Reputational Harm</u>

False statements in a credit report can create a concrete injury where the statement bears a "close relationship" with the tort of defamation. *See id.* at 432. This occurs when the published,

---

[1] Roberson also asserts injury in the form of unspecified "out-of-pocket costs." RS Clark Compl. ¶ 22. While the Court is unaware of what costs Roberson is referring to, and Roberson cannot rely on the costs of bringing litigation itself to confer standing, *see Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000), because the Court finds standing based on emotional harm, it will not address out-of-pocket costs as a separate basis.

defamatory statement would subject the plaintiff "to hatred, contempt, or ridicule." *Id.* (citations omitted). In *TransUnion*, the Supreme Court had "no trouble" finding a concrete injury in fact for certain plaintiffs, where the defendant credit reporting agency sent credit reports to third parties that labeled those plaintiffs as "potential terrorists, drug traffickers, or serious criminals." *Id.*

Roberson alleges that he suffered "reputational harm . . . of the kind traditionally recognized in actions for defamation" when RS Clark wrongly reported to third parties that his debt was disputed. RS Clark Compl. ¶ 21. However, defamation traditionally involves statements that generate "hatred, contempt, or ridicule" against the subject by the third party hearing the statement. *TransUnion*, 594 U.S. at 432 (citations omitted). Here, the alleged "defamatory" statement is that Roberson's debt was disputed, as opposed to merely unpaid and in collections status. *See* RS Clark Compl. ¶ 16; *id.*, Ex. 2. This could result in an inaccurate credit score. *Id.* ¶ 17. However, "a debt marked as disputed negatively impacts a credit score less than a debt that is not marked as disputed." *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1310 (7th Cir. 2025), *reh'g denied*, No. 23-2071, 2025 WL 462078 (7th Cir. Feb. 11, 2025); *see Mims v. LVNV Funding, LLC*, No. 24-cv-11943, 2025 WL 747858, at *3 (E.D. Mich. Mar. 7, 2025) (finding that, while reporting a debt without noting that it is in dispute violated § 1692e, "there is no apparent harm to a debtor when a dispute notation is not removed from an undisputed, or no longer disputed, debt"). Thus, to the extent RS Clark's alleged defamatory statement had any effect on Roberson, it would have effectively *inflated* his credit score and improved Roberson's ability to obtain loans in the future. RS Clark's credit report, even if false, failed to generate the kind of "hatred, contempt, or ridicule" against Roberson that characterizes traditional harm from defamation. *See TransUnion*, 594 U.S. at 432. Accordingly, Roberson's alleged reputational harm does not present a concrete injury in fact.

Roberson relies on two cases to argue that his asserted reputational harm presents a concrete injury in fact: the Fifth Circuit's decision in *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246 (5th Cir. 2017), and the Seventh Circuit's decision in *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022). But neither of these cases is sufficiently analogous. In each, the respective courts found an injury in fact where a debt-collector defendant reported debts to a third-party credit agency without informing them that those debts were *disputed*. *See Sayles*, 865 F.3d at 250; *Ewing*, 24 F.4th at 1153-54. In other words, both cases present the inverse of the facts presented here. Indeed, in *Ewing* the Seventh Circuit found the plaintiff's injury bore a close relationship to reputational harms associated with defamation because the third-party credit reporting agency who received the credit report "took into account" the unpaid debt's *non-disputed* status in determining creditworthiness. *Id.* at 1154 (noting that the report, without mentioning the disputed status, portrayed the plaintiff "as a deadbeat who does not pay her debts"). Unlike in *Ewing*, RS Clark represented Roberson as *disputing* the debt and not as a "deadbeat who does not pay [his] debts." *See id.* Thus, RS Clark's alleged misstatements did not result in defamatory harm to Roberson.

    2. <u>Emotional Harm</u>

Roberson also alleges injury in the form of "anxiety, loss of sleep, headaches, emotional distress, frustration, anger, humiliation . . . , and other negative emotions." RS Clark Compl. ¶ 22. The Fifth Circuit has held that "'emotional distress' is a traditional harm that satisfies *TransUnion*'s concreteness requirement" for alleged statutory violations. *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (finding allegations of "fear, anxiety, and emotional distress" after the plaintiff received "intimidating" letters from a debt collector enough to show a "concrete and cognizable harm under Article III") (citing *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th

816, 824 (5th Cir. 2022)). Accordingly, unlike his allegations of reputational harm, Roberson's allegations of emotional harm are sufficiently concrete to show an injury in fact. *See id.*

Because Roberson asserts a concrete injury in fact, he has standing to bring his FDCPA claim.

B.  *Roberson Fails to State a Valid FDCPA Claim*

The FDCPA was enacted in response to widespread problems in debt collection practices. One of its primary goals was to "eliminate abusive debt collection practices by debt collectors" and protect consumers against such abuses. 15 U.S.C. § 1692(e). Roberson alleges violations of § 1692e(2) and § 1692e(8) by RS Clark. *See* RS Clark Compl. ¶ 25. Section 1692e generally prohibits certain conduct made "in connection with the collection of any debt" and provides a non-exclusive list of violative conduct. *See generally* § 1692e. Relevant here, § 1692e(2) specifically prohibits "the false representation" of the "character, amount, or legal status of any debt . . . ," while § 1692e(8) prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Regardless of a debt collector's specific conduct at issue, it is only a violation when made "in connection with the collection of a debt." *See* § 1692e.

When reviewing whether a given communication violates the FDCPA, courts apply a "least sophisticated consumer" standard: an objective test that considers whether there is a reasonable likelihood that an *unsophisticated* consumer who is willing to consider carefully the contents of a communication might yet be misled by them. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citations omitted). While serving to protect all consumers, the standard also precludes liability for

"bizarre or idiosyncratic" interpretations of a given communication by presuming that consumers have a basic level of understanding and willingness to read with care. *Id.* (citation omitted).

Not all communications by debt collectors, even those regarding a debtor, are done "in connection with" the collection of a debt. *Herrera v. Ne. Credit Recovery LLC*, No. 1:19-CV-056-H, 2021 WL 6774684, at *4 (N.D. Tex. Feb. 11, 2021) (Hendrix, J.). Indeed, the Fifth Circuit has previously held that "even assuming, *arguendo*, that reporting a debt to a credit agency can be an activity 'in connection with the collection of a debt,'" a plaintiff had not alleged so where he did not assert that the report was made "as a means to collect on the debts." *Billups v. Retail Merchs. Ass'n, Inc.*, 620 F. App'x 211, 214 (5th Cir. 2015) (emphasis in original) (quoting *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014)). In so holding, the Fifth Circuit made particular note of the fact that the plaintiff had not alleged that the debt collector sent him a demand letter or otherwise attempted to induce him to pay the debt. *See id.* Other circuits have taken a similar approach. *See, e.g.*, *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) ("[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." (citation omitted)); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) ("[A] communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather, . . . a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA." (citation omitted)).

The Sixth Circuit has identified several factors to determine whether a communication is truly "animated" by a debt collection purpose:

> (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in

> response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

*Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015) (citations omitted).

Applying this approach, a Michigan federal district court recently evaluated a case nearly identical to the one presented here. In *Mims*, the plaintiff alleged a violation of § 1692e(8) when a debt collector marked a debt as "disputed" in its report to a credit bureau. 2025 WL 747858, at *1-2. Applying the factors from *Goodson*, the court found that because the dispute notation on a credit report is not a demand for payment, would not make payment more likely, does not express an attempt to collect a debt, does not threaten consequences, and is not a direct communication from a debt collector to a consumer to induce payment, it did not amount to a "false statement in connection with the collection of a debt." *Id.* at *2. Accordingly, the plaintiff failed to allege a viable claim under the FDCPA. *Id.* at *3.

Applying *Billups, Goodson,* and the district court's reasoning in *Mims*, the Court finds that RS Clark's report was not made in connection with the collection of any debt. First, Roberson has not plausibly alleged that the report was made as a means to collect on any debt. *See Billups*, 620 F. App'x at 214. Nor do Roberson's repeated, bare assertions that the report was "in connection with the collection of the debt," *see, e.g.*, RS Clark Compl. ¶¶ 15, 17, 26, or that it was "done intentionally to induce payment," *id.* ¶ 20, change the Court's analysis. *Iqbal*, 556 U.S. at 678 (explaining that "naked assertions devoid of further factual enhancement" are insufficient to survive a motion to dismiss (citation modified)). Second, applying the Sixth Circuit's test, RS Clark's communication did not demand payment, did not make payment more likely, was not made to Roberson directly, and did not threaten consequences. *See Goodson*, 600 F. App'x at 431. And third, even if incorrect,

RS Clark's dispute notation in the credit report likely resulted in an improved credit score. *See Wood*, 126 F.4th at 1310. Thus, to conclude that the dispute notation was made by RS Clark to induce Roberson's payment would result in a "bizarre or idiosyncratic interpretation[]" of the report. *See Gonzalez*, 577 F.3d at 603 (citation omitted); *Mims*, 2025 WL 747858, at *3.

Because RS Clark's dispute notation was not made "in connection with" the collection of a debt, Roberson does not state a claim for any violation of § 1692e.

## IV.
## CONCLUSION

For the foregoing reasons, RS Clark's motion to dismiss is **GRANTED**, and Roberson's claim against RS Clark is **DISMISSED**.

**SO ORDERED.**

**SIGNED: January 13, 2026.**

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE